IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARY ANN VIGIL,

    Plaintiff,

vs.

WILLIAM A. HALTER,
Deputy Commissioner of Social Security[1]

    Defendant.

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 0 8 2001

CLERK

Civ. No. 00-636 JC/RLP

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[2]

1.    Plaintiff, Mary Ann L. Vigil, (Plaintiff herein), filed applications for Disability Income Benefits (DIB) under Title II of the Social Security Act, and for Supplemental Security Income Benefits (SSI) under Title XVI of the Social Security Act, on April 8, 1995 (Tr. 31-38). She alleged exertional and nonexertional impairments stemming from injuries to her back and left arm, resulting in disability as of September 23, 1994. (Tr. 70). Plaintiff filed a subsequent application for SSI on February 13, 1997, claiming disability due to depression commencing of October 1, 1994. (Tr. 227-234). Her applications were denied at the first and second levels of administrative review, and by an Administrative Law Judge following a hearing. (Tr. 39, 48, 215-221). Plaintiff appealed the

---

[1]William A. Halter was sworn in as Deputy Commissioner of Social Security on January 19, 2001. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, William A. Halter should be substituted for Commissioner Kenneth S. Apfel as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of §205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2]Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.



ALJ's decision to the Appeals Council, which remanded the case to the ALJ, with instructions to make specified inquiries. (Tr. 236-237). Following a second administrative hearing, Plaintiff was again found not disabled. (Tr. 14-25). The Appeals Council declined review. (Tr. 7-8) The matter before this Court is Plaintiff's Motion to Reverse the decision of the Commissioner denying benefits, and to Remand for rehearing. (Docket No. 10).

2. For the reasons that follow, I recommend that the matter be remanded to the Commissioner for additional proceedings.

I. **Standard of Review**

3. This Court reviews the Commissioner's decision to determine whether the records contain substantial evidence to support the findings, and to determine whether the correct legal standards were applied. **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, I cannot weigh the evidence or substitute my discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

4. The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. **Sorenson v. Bowen**, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant at steps one through four; the Commissioner bears the burden of proof at step five. **Id.**

2

## II. Issues on Appeal

5.  Plaintiff contends that:

    - The ALJ's finding that her bipolar disorder and psychosis are "non-severe" is not supported by substantial evidence and is contrary to law;

    - The ALJ's analysis of Plaintiff's past relevant work is incomplete, and therefor contrary to law;

    - The ALJ's credibility determination is contrary to the evidence and the law, and

    - The ALJ erred by failing to consider Plaintiff's receipt of General Assistance benefits.

## III. Analysis

### A. The ALJ Erred In Evaluating Plaintiff's Mental Impairment At Step Two of the Sequential Evaluation Process.

6.  Plaintiff suffers from diagnosed mental disorders. The ALJ found that these disorders were not severe, causing "slight" limitation of activities of daily living and social functioning, "seldom" causing deficiencies of concentration, persistence or pace in work or work-like settings, and "never" resulting in deterioration or decompensation at work or in work-like settings. (Tr. 22-25). The ALJ's conclusions defy logic and misconstrue the factual record.

7.  Step two of the sequential evaluation process requires the Commissioner to determine "whether the claimant has a medically severe impairment or combination of impairments." **Bowen v. Yuckert**, 482 U.S. 137, 140-141 (1987). A disability claim may be denied at step two only if an impairment or combination of impairments produces no more than a minimal effect on the claimant's physical and/or mental ability to do basic work activities. **Soc. Sec. Rul. 85-28.** If a

3

claimant presents medical evidence which constitutes a mere *"de minimus"* showing of severity, the ALJ must proceed to step three.   **See Hawkins v. Chater**, 113 F.3d 1162, 1169 (10th Cir.1997) **citing Williams v. Bowen,** 844 F.2d 748, 751 (10th Cir. 1988). Although the ALJ found that Plaintiff's physical impairments[3] were "severe," her dismissal of Plaintiff's mental impairments taints her finding of non-disabled.

8.   The medical record reflects that Plaintiff has a chronic history of mental illness characterized by multiple episodes of bizarre behavior:

- September 5-13, 1995:  Plaintiff is admitted to the hospital after becoming increasingly disoriented and hallucinating, running around out of doors without clothing and alleging rape. (Tr. 201, 204). She is diagnosed as suffering from bipolar disorder without psychosis, mild. (Tr. 201). Her condition is eventually attributed to steroid induced psychosis[4]. (Tr. 354, 411).

- November 20, 1995:  Plaintiff is evaluated by Allison Reeve, M.D., and placed on *Zoloft* for the treatment of depressive disorder and chronic pain, with improved mood and decreased pain noted as of April 15, 1996. (Tr. 182, 274).

- October 15, 1996:  Plaintiff is placed in detention for assaulting family members with a knife. (Tr. 277)[5];

---

[3]The ALJ found that Plaintiff had "severe" impairments consisting of chronic back pain and diffuse musculoskeletal pain. (Tr. 15).

[4]Plaintiff had been given a series of steroid injections by her treating orthopedic surgeon, for the treatment of shoulder pain. (Tr. 170-171, 173-174, 185).

[5]Plaintiff contended at the time that the event complained of by her family actually occurred the prior year. Regardless of the date, it involved threatening one or two of her brother with a knife. (Tr. 297, 357).

4

- October 21, 1996: Plaintiff is involuntarily committed to the State Mental Hospital. (Tr. 269-273). She is diagnosed with a "psychotic disorder nos (not otherwise specified), rule out bipolar disorder." (Tr. 301). She exhibits a very organized delusional system with paranoid ideation.[6] She is treated with *Valproic*[7], *Haldol*[8] and *Zoloft*. (Tr. 301). Plaintiff's discharge report is not contained in the administrative record. However, other medical records indicate that she is still an in-patient two months after admission. (Tr.128, 311).

- March 23, 1997: Plaintiff is seen at Southwest Counseling Center for possible referral to a Transitional Living Unit. She continues to exhibit "poor judgment and poor insight. Poor abstract thinking. . .is quite paranoid towards members of her family, the courts, places of employment." (Tr. 357-358). She is diagnosed as suffering from Bipolar mood disorder (mixed) circular, rule out schizoaffective disorder (Axis I) and Paranoid personality disorder. (Axis II), with a GAF of 50[9]. She refuses a recommendation that she return to the State hospital for treatment with *Haldol*. (Tr. 358). She does continue, however, to take *Haldol*. (Tr. 356).

---

[6] According to treatment notes, Plaintiff had been running at neighbor kids with sticks, and was found nude claiming that bugs were crawling on her. She had been living at a homeless shelter after being evicted by her parents. She claimed that her family was retaliating against her because she had filed ten law suits against her siblings. (Tr. 177, 291, 294, 297).

[7] Used to treat symptoms of mania, pressured speech, increased irritability and poor judgment (Tr. 283).

[8] Used to treat paranoid delusions (Tr. 284).

[9] This GAF rating is indicative of serious symptoms or serious impairment in social, occupational or school functioning. **Diagnostic and Statistical Manual of Mental Disorders IV**, p. 32.

- April 28, 1997: Plaintiff is reevaluated at Southwest Counseling Center. She is experiencing tremor and stiffness as a result of *Haldol*. She no longer evidences signs of psychosis. *Haldol* is discontinued while *Zoloft* is continued. (Tr. 356).

- August 20, 1997: Plaintiff has cycled into mania while taking *Zoloft*. She agrees to take *Klonopin* (Tr. 353) which reduces her mania by the following day. She continues to take *Klonopin* and *Tegretol*. (Tr. 353).

- August 22, 1997: Plaintiff threatens her family, and is taken to Memorial Medical Center by police, where she remains as an inpatient until August 25, 1997. (Tr. 351-352).

- September 3, 1997: Plaintiff evaluated at Southwest Counseling Center, and is noted to be "misbehaving aggressively." A different medication regimen is instituted. (Tr. 352).

- September 16, 1997: Plaintiff seen on an emergency basis for worsening aggression and mania. She is described as unkempt, open/accessible, suspicious, somewhat aggressive, demanding, defensive, preoccupied, with increased psychomotor activity, restlessness, rapid and rambling speech, dysphoric mood, labile, and anxious and irritated affect. She continues to report significant conflict with family members resulting in physical confrontations. She complains of medication side affects, but agrees to restart her medications. She is diagnosed as suffering from Bipolar I, manic, psychotic. (Tr. 351).

- September 25, 1997: Plaintiff and family meet with Dr. Pacheco at Southwest Counseling Center. Plaintiff continues to exhibit symptoms, lack of insight and

6

- persecutory delusions. (Tr. 350).

- At an unspecified date in this time frame, Plaintiff is highly disruptive at a medical clinic[10], and is denied further treatment there. (Tr. 407).

- At an unspecified date in this time frame, Plaintiff is evicted from her apartment for flooding the apartment on one occasion and incurring high water bills for the landlord. (Tr. 407)

- November 10, 1997: Plaintiff steals scrubs and other small items from a clinic. Her behavior is judged "bizarre" and her judgment "impaired" by Dr. Pacheco.[11] Dr. Pacheco also determines that she is not taking her medication. Dr. Pacheco places her on *Zyprexa*[12], stating that rehospitalization will be considered if she does not become compliant with medication. Three days later Dr. Pacheco prepares a letter for the District Attorney certifying that Plaintiff suffers from a mental disorder[13], and presents a likelihood of harming herself and/or others. She recommends hospitalization in order to stabilize medication to control Plaintiff's bipolar disorder, and for ongoing therapy for her paranoid personality disorder. (Tr. 338-343). Plaintiff is again committed to the State Mental Hospital. (Tr. 387, 379-381) At

---

[10]Plaintiff called a doctor an "asshole," the clinic a "piece of shit."

[11]She is described as unkept, disheveled, initially aggressive, preoccupied with medical complaints, restless with increased psychomotor activity, with speech that is rapid and rambling, anxious and irritated affect, dysphoric mood, delusional, psychotic and with decreased judgment and insight. (Tr. 343)

[12]*Zyprexa* is an anti-psychotic agent. 1999 Physicians' Desk Reference, p. 1641.

[13]Bipolar disorder and paranoid personality disorder, with a current GAF of 35. (Tr. 338).

7

discharge on December 19, 1997, she is taking *Klonopin, Zyprexa and Zoloft*. (Tr. 395).

9. Plaintiff's bipolar disorder stabilized in the February - April 1998 time frame. By that point, she was sleeping well, no longer complaining of physical pain, gaining insight, getting along with her family and starting to exercise. (Tr 332-334).

10. The ALJ discounted the severity of Plaintiff's mental disorder, stating:

> The medical evidence as a whole, establishes the claimant has been diagnosed with a variety of psychological disorders during times under review. The evidence tends to show that the claimant's symptomatology was related, in large part, to situational problems involving lawsuits. Additionally, no doctor placed any medical restrictions on the claimant's ability to work for the durational period of 12 consecutive months, and there is no evidence that the claimant had any adverse side effects from *Zoloft*. Last, the claimant did not take prescribed medications during the time periods under review.

(Tr. 17-18).

11. The ALJ's reasoning is erroneous. Whether or not psychiatric symptomotology is "situational" is a medical determination, **see Pappas-Sanavaitis v. Chater,** 978 F.Supp. 782, 789 (N.D. Ill. 1997), which the ALJ is not qualified to make. **See Kemp v. Bowen,** 816 F.2d 1469, 1475 (10th Cir. 1987). None of Plaintiff's psychiatric diagnoses describe her bipolar disorder or paranoid as situational. The ALJ applied the wrong legal standard in determining that Plaintiff's mental condition was situational, and her conclusion to that effect is not supported by substantial evidence. Citing to the absence of doctor imposed "medical restrictions" on the ability to work is specious logic at best, when confronted with an individual who has been involuntarily committed to a mental institution twice in a 13 month period. Although Plaintiff experienced no side effects from *Zoloft*, she required other medications for stabilization and control of her psychiatric disorders. Finally,

8

a claimant's failure to follow prescribed treatment, without good reason, may result in a finding of non-disability. 20 C.F.R. §404.1530 (b). When evaluating whether the claimant has an acceptable reason for failing to follow prescribed treatment, the ALJ must consider that claimant's limitations, including mental limitations. 20 C.F.R. §1530(c). Non-compliance that results from a mental impairment may be a justifiable excuse. **See Brashears v. Apfel**, 73 F. Supp. 2d 648, 651(W.D. La. 1999) (case remanded for consideration of new evidence regarding whether claimant's failure to take medications prescribed to treat chronic paranoid schizophrenia was beyond her control); **Sharp v. Bowen**, 705 F.Supp. 1111, 1123-1124 (W.D. Pa. 1989) (severe personality disorder, causing a failure to take medication was justifiable excuse); and Social Security: Right to Disability Benefits as Affected by Refusal to Submit To, or Cooperate In, Medical or Surgical Treatment, 114 A.L.R. Fed. 141, §10 (1993) (discussing noncompliance with treatment of psychological and psychiatric problems). **See also Teter v. Heckler**, 775 F.2d 1104, 1106 (10th Cir. 1985) (discussing four factors to be considered before denying benefits based upon a refusal to undergo treatment, including whether refusal was justified.). On Remand, the ALJ must obtain medical evidence addressing whether Plaintiff's noncompliance in taking prescribed treatment was justified in light of her psychiatric disorders.

12. I will not address in detail the remainder of Plaintiff's claims. I note, however, that Plaintiff has raised other valid objections. The ALJ's discussion of Plaintiff's credibility is inconsistent. She labels Plaintiff as both not credible (Tr. 17, 19,) and credible (Tr. 21). The ALJ must reassess Plaintiff's credibility on remand. Further, the evidence indicates that Plaintiff may have received General Assistance benefits from the State of New Mexico. The Plaintiff has the burden of establishing that actual receipt of those benefits and the basis upon which the award benefits was

made. If this is done, the ALJ must address Plaintiff's receipt of general assistance benefits in accordance with **Baca v. Department of Health & Human Services**, 5 F.3d 476, 480 (10th Cir. 1993).

## IV. Recommendation

13. For these reasons, I recommend that Plaintiff's Motion to Reverse and Remand be granted and that his case be remanded to the Commissioner. On remand, the Commissioner shall:

   A. Reevaluate Plaintiff's mental impairment. In so doing, the Commissioner shall obtain medical evidence as to whether Plaintiff's failure to comply with medical treatment was justified in light of her psychiatric condition.

   B. Consider Plaintiff's mental impairment in combination with her physical impairment.

   C. Reevaluate Plaintiff's credibility.

   D. Consider and discuss Plaintiff's receipt of General Assistance benefits, provided Plaintiff carry her burden of proof in establishing receipt of those benefits, and the basis upon which benefits were awarded.

   E. Consider whether Plaintiff is entitled to a closed period of disability.

**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**